**Christopher HARGIS, Plaintiff–Appellant,**

v.

**Phil FOSTER, Beauchamp, Lahaei, D.W. McEcheron, and D. H.O. Crawford, Defendants–Appellees.**

No. 00–35466.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2001.

Filed March 7, 2002.

Amended Opinion Filed Dec. 3, 2002.

Gregory Mann Miller, Seattle, WA, for the plaintiff-appellant.

Stephanie A. Altig, Boise, ID, for the defendants-appellees.

Before: B. FLETCHER, McKEOWN, and TALLMAN, Circuit Judges.

**ORDER**

The opinion of this court filed March 7, 2002, slip op. at 3727 [282 F.3d 1154], is amended as follows:

On page 3737 [at 1159] of the slip opinion, delete the first sentence of the first full paragraph, and substitute in its stead:

Based on this evidence, a jury could reasonably conclude that the prison officials acted unreasonably in characterizing Hargis's statements as an attempt to coerce Beauchamp into not enforcing the shaving rule.

On page 3738 [at 1159] delete the entirety of the text of III. after the heading. Replace it with the following:

Hargis requested voluntary dismissal of his retaliation and Eighth Amendment claims pursuant to Fed.R.Civ.P. 41(a)(2) without specifying that he was requesting dismissal without prejudice. The district court granted the motion and dismissed with prejudice. Hargis objects to the dismissal with prejudice. We review a district court's determination of the terms and conditions of dismissal under Rule 41(a)(2) for an abuse of discretion. *Koch v. Hankins,* 8 F.3d 650, 652 (9th Cir.1993).

Rule 41(a)(2) provides:

Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems prop-

er.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Rule 41 vests the district court with discretion to dismiss an action at the plaintiff's instance "upon such terms and conditions as the court deems proper." That broad grant of discretion does not contain a preference for one kind of dismissal or another. In a separate clause, Rule 41 provides that orders that fail to specify whether dismissal is with or without prejudice are to be interpreted as dismissals without prejudice. In this limited sense, the rule has a "default position," but this default position applies to the interpretation of a silent order, not to the district court's discretionary decision in the first instance. *See Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 503, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (construing similar text in Rule 41(b) as "nothing more than a default rule for determining the import of a dismissal"); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (2d ed. 1994) ("[I]f the plaintiff either moves for dismissal without prejudice or fails to specify whether the request is for dismissal with or without prejudice, the matter is left to the discretion of the court. The court may grant dismissal without prejudice or may require that the dismissal be with prejudice. If the court's order is silent on this point, the dismissal is without prejudice....").

In the instant case, Hargis requested a dismissal without specifying whether he was requesting dismissal with or without prejudice, implicitly accepting either determination by the district court. That court could have remained silent on this point, in which case we would find the dismissal to have been without prejudice. Instead, it made its determination. Because Hargis's motion did not pre-clude this determination, we find that the district court did not abuse its discretion in doing so.

On page 3740 [at 1160] delete the text of IV following the heading (Conclusion). Replace it with the following:

Because Hargis has raised a triable issue of fact as to whether the coercion regulation was constitutional as applied to him, we reverse the district court's summary judgment on the First Amendment free speech claim and remand for further proceedings. The district court's dismissal of the retaliation and Eighth Amendment claims is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

The dissent is amended as follows:

On page 3746–47 [at 1164] of the slip opinion, delete the paragraph beginning "our opinion also errs ..."

On page 3747 [at 1164]of the slip opinion, modify the final remaining paragraph to read: "I agree that it was too late to raise an ADA claim on appeal and that the district court acted within its discretion in dismissing Hargis's retaliation and Eighth Amendment claims. Otherwise, I respectfully dissent."

With these amendments a majority of the panel has voted to deny rehearing. The full court has been advised of these amendments and has voted to deny the petition for rehearing en banc.

· The petition for rehearing and the petition for rehearing en banc are denied. No further petition for rehearing en banc will be entertained. The Clerk is directed to file and republish the majority opinion and the dissent as amended.

The mandate shall issue forthwith.

## OPINION

BETTY B. FLETCHER, Circuit Judge

Christopher Hargis, an Idaho prisoner who suffers from a neurological disorder causing jerking and shaking, brings this action, pursuant to 42 U.S.C. § 1983, against the defendant prison officials in their individual and official capacities for violating his First and Eighth Amendment rights. He asserts that the defendants violated his First Amendment right to free speech when they punished him under a coercion regulation. Hargis was disciplined for violating the coercion regulation when he informed a guard that shaving with a razor blade endangered his safety due to his medical condition and that the guard's actions and statements could come up in pending state court litigation. Hargis also claims the defendants used the coercion regulation as a pretext to retaliate against him for exercising his First Amendment right to petition the government for redress of grievances. Finally, he claims the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by forcing him to injure himself by shaving with a razor blade. The district court granted the defendants summary judgment on the free speech claim and dismissed the remaining claims.

■ We are asked to decide two questions: (1) whether there is a triable issue of fact as to whether the defendants' application of the coercion regulation in this case violated Hargis's right to free speech and (2) whether the district court abused its discretion in dismissing Hargis's retaliation and Eighth Amendment claims with prejudice. We answer both questions in the affirmative. In addition, Hargis's newly-appointed counsel raises an ADA claim. However, because the ADA claim was neither alleged nor argued in the district court, we will not consider the ADA claim on this appeal. *United States v. Antonakeas*, 255 F.3d 714, 721 (9th Cir.2001) (noting that ordinarily this court will not hear issues raised for the first time on appeal).

## I.

### Factual and Procedural Background

Hargis suffers from a medical condition known as spasmodic torticollis, a neurological disorder that causes his head to twist and jerk uncontrollably. In an attempt to obtain medical treatment for this condition, Hargis petitioned for a writ of habeas corpus in state court. While the case was pending, a prison guard, Defendant Beauchamp, ordered Hargis to shave. Prison regulations require inmates to shave daily. Hargis attempted to shave but cut himself as a result of a neck spasm after shaving only half his face. The next day Beauchamp warned that he would issue a disciplinary offense report ("DOR") if Hargis did not shave.

When the guard saw Hargis later that day, he still had not shaved. Hargis explained that he had a medical condition that made it impossible for him to shave without cutting himself. Beauchamp responded by explaining that he had discussed Hargis's medical problem with the prison medical staff and was told that Hargis had no diagnosed medical condition that would interfere with his ability to shave. Hargis suggested to Beauchamp, as an alternative to the DOR, that he be allowed to use an electric razor. According to Hargis, Beauchamp's supervisor had allowed him to use an electric razor in the past. Beauchamp refused to give Hargis an electric razor. Hargis requested to speak with the medical personnel himself or to a supervisor. Beauchamp refused.

Hargis informed Beauchamp of the pending state court proceeding and asked if Beauchamp would wait until the issue

was adjudicated. Again, Beauchamp refused. Finally, Hargis told Beauchamp that anything he said or did could come up in litigation later. Beauchamp asked Hargis if he was threatening him, and Hargis told him he was not threatening him but just informing him that his actions could be subject to review by the court. Hargis explained to the guard that he was not trying to challenge Beauchamp's authority, rather he was only asking for patience and understanding during the pendency of the state court proceedings.

After this conversation, Hargis submitted a concern form complaining that Beauchamp was trying to "coerce" him into injuring himself. Beauchamp answered that Hargis's claims of a medical condition were unsubstantiated, and that Beauchamp was not coercing him, but rather was ordering him to shave. Later that night, Hargis received a DOR. The DOR charged Hargis not with failing to shave (a Class–D infraction), but with the more serious Class–A offense of coercion. The coercion regulation specifically prohibits "involvement in any disorderly conduct by coercing or attempting to coerce any official action."

The DOR was approved after a disciplinary hearing held by Defendant Crawford. Crawford sanctioned Hargis by imposing fifteen days of disciplinary segregation. However, the sanction was suspended for ninety days, and Hargis completed the suspension without serving any disciplinary time. Hargis appealed the determination to Warden Foster, who denied the appeal. Because the Class–A offense remains on his disciplinary record, Hargis has been refused parole.

After exhausting his institutional appeals, Hargis filed suit in the district court under 42 U.S.C. § 1983. Hargis requests a judgment declaring that the defendants' actions violated the First and Eighth

Amendments. He also asks for injunctive relief against future infringement of his First Amendment rights and for expungement of the DOR from his records. Finally, he requests nominal and punitive damages for these violations.

The defendants filed a motion for summary judgment. Hargis filed a cross-motion for partial summary judgment on his free speech claim and a motion to dismiss his Eighth Amendment and retaliation claims under Fed.R.Civ.P. 41(a)(2). The district court granted defendants' motion for summary judgment on the free speech claim and dismissed Hargis's retaliation and Eighth Amendment claims with prejudice. We have jurisdiction over Hargis's appeal pursuant to 28 U.S.C. § 1291.

## II.

### Summary Judgment on the First Amendment Claim

Hargis contends that the district court erred in granting the defendants summary judgment denying his First Amendment free speech claim. A grant of summary judgment is reviewed *de novo*. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). We must determine, viewing the evidence in the light most favorable to Hargis, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

 A prisoner retains those First Amendment rights that are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir.2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)) (internal quotation marks omitted). Accordingly, under *Turner v. Safley*, a prison

regulation that impinges on an inmate's First Amendment rights is "valid if it is reasonably related to legitimate penological interests." *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 1479, 149 L.Ed.2d 420 (2001); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The district court concluded that the prison authorities have a legitimate penological interest in the consistent enforcement of prison rules and that disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest. We agree that the coercion regulation, on its face, satisfies the *Turner* test. Hargis concedes this much.

■ However, the First Amendment inquiry does not end with this facial analysis. Hargis argues that, although facially valid, the coercion regulation was unconstitutional as applied to him because his conversation with Beauchamp was not coercive. *See, e.g., Shaw*, 121 S.Ct. at 1481 ("[T]he question remains whether the prison regulations, *as applied* to Murphy, are 'reasonably related to legitimate penological interests.' ") (emphasis added).

We assign no heightened value to Hargis's speech. In ruling on this as-applied challenge, we examine whether applying the regulation to that speech—whatever its value—was rationally related to the legitimate penological interest asserted by the prison. To the extent the dissent argues that *Shaw* prohibits this sort of examination, we disagree. The Supreme Court specifically remanded *Shaw* to answer the question whether the prison regulations, as applied, were reasonably related to legitimate penological interests. *Shaw*, 121 S.Ct. at 1481.

■ In conducting the as-applied analysis, we must determine whether there is a genuine dispute as to whether Hargis's statements in fact implicated legitimate se-

curity concerns. As noted above, the coercion regulation is intended to further the maintenance of institutional order through the consistent enforcement of prison rules, including the rule requiring inmates to shave. However, the evidence in the record reveals that Hargis's statements, taken in the full context of his conversation with the guard, may not have been an attempt to coerce the guard into not enforcing the shaving rule.

In his sworn affidavit, Hargis states that he attempted to shave his face with a regular razor; he was only able to shave part of his face before he cut himself. Hargis described the subsequent conversation with the guard as follows:

> During the entire conversation noone [sic] else was around, not staff or other inmates. I was courteous, even pleading with Mr. Beauchampo [sic] not to punish me for not shaving.
>
> I asked Beauchamp, as an alternative to the DOR, to allow me to use the electric razor as his supervisor had done in the past. This electric one would not cut me, I could shave both sides of my face and was a reasonable alternative to the DOR.
>
> Beauchamp refused to let me use the electric razor. He also refused to let me talk to medical personnel again. I asked to see ANY supervisor, this too was refused.
>
> I told Beauchamp of the pending "writ" and asked if he would please wait till [sic] that issue was adjudicated. This too was refused.

Hargis Affidavit at 3. In another sworn statement attached to his complaint, Hargis provided more details about the conversation:

> I went on to say he should know that disciplinary action could only add to my suffering and damages and that "Any-

thing that is said or done to me during the litigation would be brought to the attention of the Judge and Respondent, Warden Foster." Beauchamp said, "Now you're threatening me." I said, "No, I'm not. I'm notifying you that your actions could be subject to review by the Court. You should know I will supplement the petition should my suffering increase as a result of your disciplinary action." Beauchamp said he had a job to do. I said we were both in a spot and I again asked him to speak with Cpl. Willey who had let me use an electric razor. This would allow me to follow the shaving rule "safely." I repeated my willingness to follow the rules and really wanted to shave, and that I hated walking around with a partially shaven face and cuts on my face. He seemed indignent [sic] and left.

Motion to Supplement Original Petition in the Second Judicial District of the State of Idaho at 3. Although Beauchamp's affidavit leaves out most of the details of the conversation, it does not contradict Hargis's version of these events. Where he does provide details, they are consistent with Hargis's description.

Based on this evidence, a jury could reasonably conclude that the prison officials acted unreasonably in characterizing Hargis's statements as an attempt to coerce Beauchamp into not enforcing the shaving rule. Hargis wanted to comply with the shaving rule, had tried to shave, and was offering a way that he could shave safely. Hargis was merely asking to be given access to an electric razor, which Beauchamp's supervisor had let him use in the past. According to Hargis, he spoke with Beauchamp in a quiet and respectful manner and mentioned the litigation only as a last resort to convince Beauchamp that he was entitled to some minor accommodation for his medical condition.

As additional support for his contention that his statements were not coercive, Hargis produced statements from prison officials that they were not threatened by the prospect of his litigation. For example, in the Disciplinary Appeal Form, the warden wrote: "The staff here are not in fear of your court action and I welcome inquiries from the court." This comment suggests that the defendants considered Hargis's actions to be innocuous.

Viewing the evidence in the light most favorable to Hargis, a genuine dispute exists as to whether the application of the coercion regulation in this case was unjustified and not rationally connected to the legitimate security concerns asserted by the defendants. A jury could reasonably find that charging Hargis with such a severe disciplinary infraction as coercion was an "exaggerated response" to conduct that posed, at most, a de minimis risk to security. *See Turner*, 482 U.S. at 97–98, 107 S.Ct. 2254 (holding that a ban on prisoners' marrying represented an exaggerated response to legitimate security and rehabilitation concerns). We conclude that Hargis has raised factual issues that cannot be resolved at the summary judgment stage. *See Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir.1999) ("Summary judgment is not proper if material factual issues exist for trial.").

■ Although the prison officials raise the issue of qualified immunity, the district court did not reach this issue, and we decline to address it on this appeal. *See Schneider v. County of San Diego*, 28 F.3d 89, 93 (9th Cir.1994) (refusing to address a qualified immunity argument where the district court granted summary judgment on other grounds because qualified immunity "should be addressed in the first instance by the district court"). We express no opinion on the merits of this defense.

We reverse and remand for further proceedings.

## III.

### Dismissal of the Retaliation and Eighth Amendment Claims

 Hargis requested voluntary dismissal of his retaliation and Eighth Amendment claims pursuant to Fed. R.Civ.P. 41(a)(2) without specifying that he was requesting dismissal without prejudice. The district court granted the motion and dismissed with prejudice. Hargis objects to the dismissal with prejudice. We review a district court's determination of the terms and conditions of dismissal under Rule 41(a)(2) for an abuse of discretion. *Koch v. Hankins,* 8 F.3d 650, 652 (9th Cir.1993).

 Rule 41(a)(2) provides:

Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Rule 41 vests the district court with discretion to dismiss an action at the plaintiff's instance "upon such terms and conditions as the court deems proper." That broad grant of discretion does not contain a preference for one kind of dismissal or another. In a separate clause, Rule 41 provides that orders that fail to specify whether dismissal is with or without prejudice are to be interpreted as dismissals without prejudice. In this limited sense, the rule has a "default position," but this default position applies to the interpretation of a silent order, not to the district court's discretionary decision in the first instance. *See Semtek Int'l v. Lockheed Martin Corp.,* 531 U.S. 497, 503, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (construing similar text in Rule 41(b) as "nothing more than a default rule for determining the import of a dismissal"); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (2d ed. 1994) ("[I]f the plaintiff either moves for dismissal without prejudice or fails to specify whether the request is for dismissal with or without prejudice, the matter is left to the discretion of the court. The court may grant dismissal without prejudice or may require that the dismissal be with prejudice. If the court's order is silent on this point, the dismissal is without prejudice....").

 In the instant case, Hargis requested a dismissal without specifying whether he was requesting dismissal with or without prejudice, implicitly accepting either determination by the district court. That court could have remained silent on this point, in which case we would find the dismissal to have been without prejudice. Instead, it made its determination. Because Hargis's motion did not preclude this determination, we find that the district court did not abuse its discretion in doing so.

## IV.

### Conclusion

Because Hargis has raised a triable issue of fact as to whether the coercion regulation was constitutional as applied to him, we reverse the district court's summary judgment on the First Amendment free speech claim and remand for further proceedings. The district court's dismissal of the retaliation and Eighth Amendment claims is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

TALLMAN, Circuit Judge, dissenting:

A recalcitrant prisoner seeking an exception to a prison regulation threatens a guard to avoid compliance. The warden affirms a disciplinary violation after a prison hearing finds the words to be coercive. The Court now holds that summary judgment in favor of the defendants dismissing his civil rights suit was improper because a jury must consider the context in which inmate Hargis delivered his threatening words to correctional officer Beauchamp. The problem with the Court's opinion is that it virtually ignores the most important aspect of the context in which the speech was delivered—in a prison. And it is the prison setting that dictates the outcome in this case.

Individuals sentenced to prison simply do not enjoy the same liberties as ordinary citizens. Obviously, their ability to travel freely is practically negated. They can be locked up, ordered about, told when to eat, when to exercise, when to shave, when to shower, and when to sleep. They also may be deprived of their right to vote. *See Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). It should therefore surprise no one that prisoners do not enjoy the same First Amendment rights as law-abiding citizens.

Nevertheless, the Court once again improperly extends the First Amendment protections of prisoners by asking the district court to reconsider its "as applied" analysis because my colleagues believe the district court may have gotten it wrong the first time. In effect, our opinion mandates that a jury be allowed to determine how coercive and dangerous Hargis's speech was. One might have hoped we would have learned the lessons from the mistakes of our past.

In 1996, the Supreme Court reversed our ruling when we and the district court had become "enmeshed in the minutiae of prison operations" concerning prisons' law libraries and legal assistance programs. *Lewis v. Casey*, 518 U.S. 343, 362, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). The Supreme Court held that we and the district court "failed to accord adequate deference to the judgment of the prison authorities" and that the district court's injunction was "inordinately—indeed, wildly—intrusive." *Id.* at 361–62, 116 S.Ct. 2174.

In 1999, this Court had to go en banc, *see Mauro v. Arpaio*, 188 F.3d 1054 (9th Cir.1999) (en banc), *cert. denied* 529 U.S. 1018, 120 S.Ct. 1419, 146 L.Ed.2d 311 (2000), in order to affirm a district court's grant of summary judgment on behalf of defendants who instituted a policy prohibiting inmates from possessing "sexually explicit material" after a panel of this Court had initially reversed the district court's decision. *See Mauro v. Arpaio*, 162 F.3d 547 (9th Cir.1998), *withdrawing Mauro v. Arpaio*, 147 F.3d 1137 (9th Cir.1998). As we stated in the en banc opinion, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." 188 F.3d at 1058 (citations omitted). By overruling the prison's determination that penological interests are served by prohibiting inmates access to *Playboy*, the panel decision "unnecessarily perpetuat[ed] the involvement of the federal courts in affairs of prison administration." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

Just last year the Supreme Court unanimously overturned another one of our decisions in *Shaw v. Murphy*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). In

*Shaw*, we had sought to provide special First Amendment protection to prison communications between inmates involving legal advice from jailhouse lawyers. The Supreme Court reversed our decision and warned us that courts are not to evaluate the content of a prisoner's communication but rather only concern themselves with the "relationship between the asserted penological interests and the prison regulation." *Id.* at 230, 121 S.Ct. 1475.

With this decision, we once again fail to follow the clearly developed analytical framework that the Supreme Court has provided for evaluating the First Amendment rights of prisoners. *See Shaw*, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420; *Turner*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. *Turner* established that a prison regulation is valid even where it impinges on prisoners' constitutional rights so long as the regulation "is reasonably related to legitimate penological interests." 482 U.S. at 89, 107 S.Ct. 2254. The Supreme Court listed four factors to be considered when evaluating the reasonableness of the relationship between the regulation and the penological interests. First, and most importantly, there must be " 'a valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)). If the regulation meets this first requirement, courts also consider whether inmates have "alternative means of exercising" their constitutional right; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and whether there are "ready alternatives" available to the prison to meet its objectives. *Id.* at 90, 107 S.Ct. 2254.

In *Shaw*, the Supreme Court unanimously overturned our decision in which we sought to give added protection to prisoner communications involving legal advice. *See* 532 U.S. at 230, 121 S.Ct. 1475. The Supreme Court observed that to add protection based on content, a court would have to make a value assessment of the content. *See id.* In order to do so, the court would have to "assume a greater role in decisions affecting prison administration." *Id.* This would violate the principle that prison officials "remain the primary arbiters of the problems that arise in prison management." *Id.*

While it is true that *Shaw*, like *Turner*, concerned a facial challenge to a prison regulation, the unanimous Court stated that upon remand for an "as applied" analysis, the prisoner faced a "heavy burden" in attempting to show that prison officials did not act within their "broad discretion." *Id.* at 232, 121 S.Ct. 1475. The record in this case reflects that the district court already evaluated an "as applied" challenge and properly rejected it. We should therefore affirm.

No one questions the constitutionality of an anti-coercion regulation proscribing threats by inmates to maintain discipline and good order in a prison. This is not surprising given that there are prohibitions against verbalized threats that constitute assault or extortion even by otherwise law-abiding citizens under the theory that such speech is more directly tied to an act than protected expression. *See* Charles Fried, *The New First Amendment Jurisprudence: A Threat to Liberty*, 59 U. Chi. L.Rev. 225, 241–42 (1992) ("The law of assault is grounded not in the communication of information (a threat, after all, is not just a statement of fact), but in the physical imposition for which the assault is a preparatory step."); *cf. United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20

L.Ed.2d 672 (1968) (government can prohibit noncommunicative aspect of conduct unrelated to expression). Thus, no one here argues that Idaho prison disciplinary code § 02–V, which prohibits "involvement in any disorderly conduct by coercing or attempting to coerce official action," is unconstitutional on its face. We simply do not permit the inmates to run the prison by intimidating their guards.

The district court already examined the "context of the specific facts presented in this case" and held that Hargis "failed to show that the rule against coercion *as applied to him* for the October 1998 disciplinary offense for verbal threats of involving an officer in litigation is not reasonably related to the legitimate penological interests of [the prison]." (emphasis added). It did so after applying the four *Turner* factors to Hargis, especially noting that Hargis had the ability to file a written grievance rather than orally threaten Beauchamp in person. The district court relied upon the state of the Ninth Circuit law at the time. *See Bradley v. Hall*, 64 F.3d 1276, 1281 (9th Cir.1995) (finding a difference between a prisoner's "right to file a grievance" and a prisoner's "open expression of disrespect or any disrespectful communication between prisoner and guard").

The district court's analysis was performed before *Shaw* was decided. Even assuming that *Bradley* retains life after *Shaw*, the district court properly addressed Hargis's "as applied" challenge to the Idaho regulation. The assumption that *Bradley* lives is questionable at best, however. In *Shaw*, the Supreme Court criticized *Bradley's* approach of "balanc[ing] the importance of the prisoner's infringed right against the importance of the penological interest served by the rule," 532 U.S. at 230 n. 2, 121 S.Ct. 1475,

because "increas[ing] the constitutional protection based upon the content of a communication first requires an assessment of the value of that content." *Id.* at 230, 121 S.Ct. 1475. *Shaw* warns lower federal courts not to assess the value of the content of the prisoner's expression. But without citing *Bradley* that is exactly what our opinion tries to do in suggesting that a jury must now decide whether Hargis's words were "innocuous" and "not coercive." Op. at 411.

There is no need to remand. The district court already considered an "as applied" challenge and rejected it. So should we.

Prisons exist to maintain order over those who have demonstrated that they are incapable of following the rules established by society. Coercion undermines that effort. Prisoners have alternative means of exercising their rights, such as by filing a written grievance rather than directing comments personally to guards. Allowing inmates such as Hargis to personally threaten or warn guards like Beauchamp to evade compliance with legitimate institutional rules would have a dramatic effect on prison life—prisoners would be quicker to verbalize and attempt to intimidate guards, and guards would have to attempt to guess what a prisoner *really meant* every time a prisoner made a veiled threat. Finally, the government has few alternatives in this sort of situation. Prison officials must maintain order if they are to remain in control. The written grievance procedure available here accommodates prisoners' rights while preventing direct confrontations between guards and prisoners.

It is not our job, or that of a jury, to guess what Hargis might have meant or might have been thinking when he verbally warned Beauchamp that if he forced Hargis to shave with a safety blade Beau-

champ's action would be subject to court review. Prison officials conducted a disciplinary hearing and determined that those words represented coercion. It is not the legitimate role of a federal court to suggest to the warden and his officers that there is an alternative interpretation, that prison officials may have been wrong, and that a jury should determine the truth. This amounts to "assum[ing] a greater role in decisions involving prison administration" than courts are justified in making and violates the principle that prison officials "remain the primary arbiters of the problems that arise in prison management." *Shaw*, 532 U.S. at 230, 121 S.Ct. 1475.

We simply do not analyze a prisoner's First Amendment rights the way we would the First Amendment rights of a law-abiding citizen. Prisoners sacrifice many of their freedoms as proper punishment for their crimes. Whether inmate Hargis actually intended to threaten or coerce correctional officer Beauchamp does not matter. What does matter is that the Idaho Correctional Institution at Orofino had a necessary regulation designed to prohibit coercion; the regulation is clearly constitutional because it has a legitimate penological purpose; and prison officials reasonably determined that Hargis sought to coerce Officer Beauchamp. This determination was certainly within the "broad discretion" granted prison officials.

Hargis's speech raises no issue of material fact; he said what he said and no one challenges that. Thus, we may affirm the district court's ruling where it properly applied the substantive law. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir.2001). Neither courts nor juries have the responsibility for running prisons. Nor do they have primary responsibility for assessing the content of prisoner speech. Those duties belong to prison officials. They discharged them reasonably in this case. The district court held that *as applied to Hargis* the prison regulation was constitutional. The court was right.

I agree that it was too late to raise an ADA claim on appeal and that the district court acted within its discretion in dismissing Hargis's retaliation and Eighth Amendment claims. Otherwise, I respectfully dissent.