350 F.3d 917
 Todd Lewis ASHKER, Plaintiff-Appellee,
v.
CALIFORNIA DEPARTMENT OF CORRECTIONS; James Gomez; G. Bonnie Garibay; S. Bonaccorso; M. Jensen; S. Cambra; S. Steinberg,
M.D.; Winslow; Dr. Astorga; C. Gollihar; S. Ricci, M.T.A.; K. Butcher; B. Patton; M. Billington; B. Grinstead; Joe McGrath, Warden, Defendants-Appellants.
 No. 02-17077.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 7, 2003.
 Filed November 18, 2003.
 
 Gregory S. Walston, Deputy Attorney General, San Francisco, California, for the defendants-appellants.
 Herman A.D. Franck, Sacramento, California, for the plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California; Claudia Wilken, District Judge, Presiding. D.C. No. CV 97-1109 CW.
 Before: Betty B. FLETCHER and A. Wallace TASHIMA, Circuit Judges, and Louis H. POLLAK, Senior District Judge.*
 OPINION
 TASHIMA, Circuit Judge.
 
 
 1
 Defendants-Appellants, the California Department of Corrections and various prison officials (collectively, "CDC"), appeal an order of the district court granting summary judgment in favor of Plaintiff-Appellee, Todd Lewis Ashker, and issuing a permanent injunction against CDC. Ashker, a state prisoner housed in the Security Housing Unit ("SHU") at Pelican Bay State Prison ("PBSP"), challenged a prison policy requiring books and magazines mailed to the prison to have an approved vendor label affixed to the package. In a published opinion, the district court granted summary judgment in favor of Ashker because the policy unreasonably burdened Ashker's First Amendment rights and was not rationally related to a legitimate penological objective. Ashker v. Cal. Dep't of Corr., 224 F.Supp.2d 1253, 1262 (N.D.Cal. 2002). The court further held that Ashker was entitled to injunctive relief and issued a permanent injunction enjoining PBSP from enforcing the book label requirement. Id. at 1263-64. Our jurisdiction is pursuant to 28 U.S.C. §§ 1291 and 1292(a).[1] We affirm.
 
 BACKGROUND[2]
 
 2
 Ashker's complaint under 42 U.S.C. § 1983 alleged violations of his rights under the First and Eighth Amendments.[3] Ashker contended that a prison policy requiring all packages containing books and magazines to have an approved vendor label affixed to the package violated his First Amendment rights.
 
 
 3
 The policy at issue provides, in part, as follows:
 
 L. Books, Magazines, and Calendars
 
 4
 1. Books, magazines, and calendars may be ordered through special purchase, or may be sent in from an approved mail order vendor. All book packages must have an approved book label attached with the vendor stamp. Books received without a book label or vendor stamp will be returned to sender....
 
 
 5
 Y. Delivery of personal property to institution:
 
 
 6
 All personal property coming into the institution must have prior approval, and must be received via U.S. Mail or common carrier.... In order to prevent the introduction of contraband, all property and packages received at this institution will be searched by custodial staff prior to delivery to the addressee....
 
 
 7
 Z. Personal property items may be acquired in the following manner: ...
 
 
 8
 3. Special Purchases: Personal property items ... purchased by the inmate through special purchase procedures ... may be ordered and shipped directly from institutional approved vendor(s).... Special purchases ... include tennis shoes, thermal tops and bottoms, approved appliances, and books/periodicals/magazines/calendars.... Books/periodicals/magazines/calendars may be ordered from a mail order book store or publisher and approved book labels must be attached.... Any packages from a book vendor or publisher must have a book label with a vendor stamp attached. Packages without the vendor stamp, label, or the required signatures, will be returned to sender.
 
 
 9
 Glen Rodman, a sergeant at PBSP in Receiving and Release ("R & R"), explained that the majority of SHU inmates are involved in gang activity and are therefore likely to receive contraband in the mail, such as books containing drugs or encrypted with gang messages. All items received by PBSP are inspected for contraband and may further be inspected by a fluoroscope machine. Because such machines cannot detect encrypted material, the book label requirement is an additional security measure designed "to help ensure that reading material comes directly from the vendor, as opposed to passing through an unknown third party." According to Rodman, "[a]n additional purpose served by the book label requirement is to reduce the amount of material that is required to be individually screened by" the three R & R staff members who are responsible for tracking the mail, searching it for contraband, and delivering approved materials to inmates.
 
 
 10
 In October 1996, Ashker's friend, Didar Khalsa, ordered books from Barnes & Noble Booksellers to be delivered to Ashker, including with her order the vendor label required by CDC. In December 1996, when Ashker still had not received the books, Khalsa contacted PBSP and learned that between November and December 1996, over one hundred book packages had been returned to the senders because of the vendors' failure either to place the vendor label on the box or to place a vendor stamp in the appropriate box on the label. Ashker eventually received the books several months later, after Khalsa took the book label to the book store. Ashker no longer asks Khalsa to attempt to order books for him because of the difficulties she has encountered in the process. Because Ashker has no one else to help him, he has received no books for at least two years.
 
 
 11
 Ashker's cellmate, Frank Clement, also has encountered difficulties in attempting to order books due to the book label policy. One book publisher told Clement that it is unable to comply with the book label requirement because it receives orders and fills them in different locations; this publisher subsequently informed Clement that it would no longer ship books to correctional facilities.
 
 STANDARD OF REVIEW
 
 12
 The district court's grant of summary judgment is reviewed de novo. Hargis v. Foster, 312 F.3d 404, 409 (9th Cir.2002). "Here, the facts underlying the district court's conclusion ... are not in dispute; therefore, the only question we must determine is whether the district court correctly applied the law." EEOC v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742, 746 (9th Cir.2003) (en banc) (internal quotation marks and citation omitted). The district court's grant of permanent injunctive relief is reviewed for an abuse of discretion or application of erroneous legal standards. Gomez v. Vernon, 255 F.3d 1118, 1128 (9th Cir.), cert. denied sub nom. Beauclair v. Gomez, 534 U.S. 1066, 122 S.Ct. 667, 151 L.Ed.2d 581 (2001). Because a state agency must be granted latitude in the operation of its internal affairs, injunctive relief is appropriate only when irreparable injury is threatened, and the injunctive relief "must avoid unnecessary disruption to the state agency's `normal course of proceeding.'" Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 501, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
 
 DISCUSSION
 
 13
 "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, "[a] prisoner retains those First Amendment rights that are `not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" Hargis, 312 F.3d at 409 (quoting Prison Legal News v. Cook, 238 F.3d 1145, 1149 (9th Cir.2001)). A prison regulation that impinges on inmates' constitutional rights therefore is valid only if it is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 88, 107 S.Ct. 2254. "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." Id. at 89, 107 S.Ct. 2254. Nonetheless, deference is accorded to prison authorities in order to avoid "hamper[ing] their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Id. at 85, 88, 107 S.Ct. 2254.
 
 
 14
 In determining whether a prison regulation is reasonably related to a legitimate penological interest, courts examine four factors established in Turner:
 
 
 15
 (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.
 
 
 16
 Morrison v. Hall, 261 F.3d 896, 901 (9th Cir.2001) (quoting Prison Legal News, 238 F.3d at 1149). The first factor is a sine qua non. Id.; Prison Legal News, 238 F.3d at 1151. Therefore, if the prison fails to show that the regulation is rationally related to a legitimate penological objective, we do not consider the other factors. Prison Legal News, 238 F.3d at 1151. In considering the first factor, we are to (1) determine whether the regulation is legitimate and neutral, and (2) assess whether there is a rational relationship between the governmental objective and the regulation. Morrison, 261 F.3d at 901-02. For purposes of this discussion, we assume that the prison's asserted interest in security and order is a legitimate penological objective. We conclude, however, that the challenged book label policy is not rationally related to that objective.
 
 
 17
 In determining whether there is a rational relationship between the purported objective and the regulation, the level of scrutiny applied to the judgment of prison officials "depends on the circumstances in each case." Prison Legal News, 238 F.3d at 1150. If the inmate presents sufficient evidence to "refute[] a commonsense connection between a legitimate objective and a prison regulation, ... the state must present enough counter-evidence to show that the connection is not so `remote as to render the policy arbitrary or irrational.'" Frost v. Symington, 197 F.3d 348, 357 (9th Cir.1999) (quoting Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir.1999) (en banc)); see also Johnson v. Cal., 321 F.3d 791, 801-02 (9th Cir.2003) (discussing Frost). If, however, the inmate does not present evidence sufficient to refute a common-sense connection between the regulation and the government objective, "prison officials need not prove that the banned material actually caused problems in the past, or that the materials are `likely' to cause problems in the future." Mauro, 188 F.3d at 1060. "The only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests." Prison Legal News, 238 F.3d at 1150.
 
 
 18
 We agree with the district court that the evidence submitted by both Ashker and CDC "refutes any common-sense connection between the book label policy and PBSP's legitimate goals of ensuring against contraband and providing prison safety." Ashker, 224 F.Supp.2d at 1260. When the inmate presents such evidence, the state is required to "`present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational.'" Prison Legal News, 238 F.3d at 1150(quoting Frost, 197 F.3d at 357). CDC has failed to do so.
 
 
 19
 First, CDC already requires that books be sent directly from approved vendors. As the district court reasoned, prison staff can easily determine whether packages have been sent directly by vendors or have been sent to a third party first by checking address labels and invoices. See Ashker, 224 F.Supp.2d at 1261. If the package had been sent to a third party, who then sent the package to the prisoner, the vendor's address label and invoice would indicate that fact. Requiring R & R staff to check the address label seems no more burdensome than requiring them to check for the vendor label and the vendor stamp in the appropriate box on the label. CDC has presented no evidence or argument to refute this reasoning.
 
 
 20
 Second, all personal property received by inmates in the mail is searched prior to delivery. CDC contends that these searches are not always effective, pointing out that contraband has been missed due to human error. However, "CDC[has] articulate[d] no scenario in which the book label policy provides a measure of security not afforded by these routine and mandatory searches." Id. CDC further argues that the fluoroscope machine does not detect weapons or encrypted messages. That the lack of a book label can act as a sort of "red flag," alerting prison staff to books sent by non-vendors when their routine search may have missed this fact may be a legitimate concern, but it is a concern that is quite lacking in substantial evidentiary support. The district court pointed out that Sergeant Rodman "provide[d] absolutely no specific facts regarding the alleged incident" in which drugs escaped the detection of the fluoroscope machine, id., and, on appeal, CDC has pointed to no evidence in the record regarding the efficacy of the book label policy.
 
 
 21
 Finally, at least with respect to contraband, there is no rational basis for CDC to impose an approved vendor label requirement on books, but not on tennis shoes, thermal clothing, or appliances. CDC has made no effort to explain why books are more susceptible to being used to deliver contraband than other items. "Common sense would dictate that PBSP's concern would extend to such items." Id. at 1262. Because the book label policy fails the first Turner factor, we do not address the other factors.[4] Morrison, 261 F.3d at 901.
 
 
 22
 CDC contends that inmates have no constitutional right to receive books and magazines from any source they choose, citing Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This argument completely misses the point. Ashker does not take issue with the requirement that books come from approved vendors, which is the policy approved in Bell. See id. at 549-52, 99 S.Ct. 1861. Rather, what Ashker contends is that the additional book label requirement has arbitrarily prohibited him from receiving any books whatsoever, thus violating his First Amendment rights. CDC's legitimate interest in preventing the introduction of contraband is adequately satisfied by the requirement that books be sent directly from approved vendors and by the policy of searching all incoming packages. There is no rational basis for the added imposition of the vendor label policy, which unnecessarily burdens Ashker's First Amendment rights by cutting off his receipt of books.
 
 
 23
 CDC has made no argument regarding the grant of the permanent injunction. Even if it had, we conclude that the district court properly granted the injunction. Ashker has established irreparable injury by demonstrating his inability to receive books. Enjoining the book label policy "`heel[s] close to the identified violation'" and is not overly intrusive because the prison still searches every incoming package and can determine from the address label and invoice whether the package came directly from a vendor. Armstrong v. Davis, 275 F.3d 849, 872 (9th Cir.2001) (quoting Gilmore v. Cal., 220 F.3d 987, 1005 (9th Cir.2000)) (alteration in Armstrong), cert. denied, 537 U.S. 812 (2002); see also 18 U.S.C. § 3626(a)(1) (requiring that relief with respect to prison conditions "extend no further than necessary to correct the violation of the Federal right" and be "the least intrusive means necessary to correct the violation of the Federal right"); Armstrong, 275 F.3d at 872(stating that injunctive relief that interferes with the affairs of a state agency must not be "overly `intrusive and unworkable'" and must not "`require for its enforcement the continuous supervision by the federal court over the conduct of [state officers]'") (quoting O'Shea, 414 U.S. at 500, 501, 94 S.Ct. 669) (brackets in Armstrong).
 
 CONCLUSION
 
 24
 The district court did not err in concluding that the book label requirement is not rationally related to a legitimate penological objective. The requirement that books be sent from approved vendors, the policy of searching all incoming packages, and the lack of a vendor label requirement for items such as shoes, clothing, and appliances support the conclusion that the book label policy is not rationally related to the need to prevent the introduction of contraband. The injunction granted by the district court is not overly intrusive and is closely tied to the identified violation. The judgment of the district court accordingly is
 
 
 25
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The record is unclear as to whether the district court entered a final judgment with respect to Ashker's Eighth Amendment claims. The judgment appealed from recites merely that "Ashker's claims not adjudicated by the Court have been settled and pursuant to the Settlement Agreement ... this Court shall retain jurisdiction over this case...." If a final judgment has been entered, we have jurisdiction under § 1291; if a final judgment (i.e., one disposing of all claims against all parties) has not been entered, the injunction remains "interlocutory" and thus appealable under § 1292(a)(1).
 
 
 [2]
 The facts are fully set forth in the district court's opinion. We recite here only the salient facts necessary to understand our opinion
 
 
 [3]
 The alleged Eighth Amendment violations are the subject of a settlement agreement currently before the district court and are not at issue in this appealSee footnote 1, supra.
 
 
 [4]
 Even so, the remaining factors favor Ashker. The second factor, the existence of alternative avenues for inmates to exercise their rights, favors Ashker because, as inPrison Legal News, in which the court reasoned that the inmate cannot force a publisher to pay a higher mail rate, Prison Legal News, 238 F.3d at 1149, the inmate here cannot force a vendor to apply the book label. Accommodating the asserted right does not have much impact on the prison because the prison already searches all incoming packages. Finally, the existence of easy and obvious alternatives, such as examining package address labels and invoices, rather than for an approved label, supports the conclusion that the regulation is an exaggerated response by prison officials.