Frank S. CLEMENT, Plaintiff–Appellee,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS; Teresa Schwartz; Auggie Lopez; Susan Steinberg, M.D.; Dwight Winslow, M.D.; T. Puget, C/O, Defendants,

and

Cal Terhune; Robert Ayers; D. Stewart, Mailroom Staff, Defendants–Appellants.

No. 03–15006.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 2004.

Filed April 20, 2004.

Rochelle Holzmann, Supervising Deputy Attorney General of the State of California, for the defendants-appellants.

Robert A. Mittelstaedt, Craig E. Stewart of Jones Day; Jennifer Starks; Ann Brick of the American Civil Liberties Union Foundation of Northern California; and Donald Specter and Heather Mackay of the Prison Law Office, for the plaintiff-appellee.

Lee Tien and Kevin Bankston of the Electronic Frontier Foundation, San Francisco, for amicus curiae Prison Legal News.

Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Judge.*

PER CURIAM.

Plaintiff/Appellee Frank Clement, an inmate at Pelican Bay State Prison ("Pelican Bay"), alleges in this 42 U.S.C. § 1983 action that his First Amendment rights were violated by Pelican Bay's enforcement of its policy prohibiting inmates from receiving mail containing material downloaded from the internet. The district court denied the motion for summary judgment by the defendants/appellants, the California Department of Corrections and the individual corrections officials (collectively, "CDC"). The district court then sua sponte granted summary judgment for Clement and issued a permanent, statewide injunction against the enforcement of the internet mail policy. CDC appeals. We affirm the district court's judgment and uphold the injunction.

**I.**

In 2001, Pelican Bay adopted an internet-generated mail policy that provided: "No Internet Mail. After reviewing staffing levels and security issues internet mail will not be allowed. To do so would jeopardize the safety and security of the institution." The policy prohibits only mail containing material that has been downloaded from the internet but is not violated

---

\* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

if information from the internet is retyped or copied into a document generated in a word processor program. The policy prohibits photocopies of downloaded internet materials but not of non-internet publications. Pelican Bay receives at most 500 pieces of mail containing internet materials, out of 300,000 total letters per month.

At least eight other California prisons have adopted similar policies. Prisoners are not allowed to access the internet directly, so Clement asserts that the policies effectively prevent inmates from accessing information that is available only on the internet, or is prohibitively expensive and time-consuming to obtain through other methods. For example, there is record evidence that several non-profit groups, such as Stop Prisoner Rape, publish information only on the internet, and that many legal materials are readily accessible only on the internet.

The district court denied CDC's motion for summary judgment. Although Clement had not moved for summary judgment, the district court sua sponte held that the Pelican Bay internet mail policy violated his First Amendment rights and entered judgment for Clement. *Clement v. California Dep't of Corrections,* 220 F.Supp.2d 1098, 1114 (N.D.Cal.2002) (citing *Portsmouth Square, Inc. v. Shareholders Protective Comm.,* 770 F.2d 866 (9th Cir. 1985)). The court then entered a permanent injunction, which provides: "The Defendants as well as their officers, directors, employees, agents and those in privity with them are enjoined from enforcing any policy prohibiting California inmates from receiving mail because it contains Internet-generated information."

## II.

■ The First Amendment "embraces the right to distribute literature, and necessarily protects the right to receive it." *Martin v. City of Struthers,*

*Ohio,* 319 U.S. 141, 143, 63 S.Ct. 862, 87 L.Ed. 1313. (1943). It protects material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era. *Reno v. ACLU,* 521 U.S. 844, 868, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). "[T]he right to receive publications is ... a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them." *Lamont v. Postmaster General of U.S.,* 381 U.S. 301, 308, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) (Brennan, J., concurring).

■ Prisoners retain their First Amendment right to receive information while incarcerated. *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."); *Prison Legal News v. Cook,* 238 F.3d 1145, 1149 (9th Cir.2001) (holding that a prison regulation banning standard-rate mail "implicates both Publisher's and Prisoners' First Amendment rights"); *see also Morrison v. Hall,* 261 F.3d 896, 906 (9th Cir.2001) ("The Supreme Court has repeatedly recognized that restrictions on the delivery of mail burden an inmate's ability to exercise his or her First Amendment rights."). This First Amendment right is operative unless it is "inconsistent with [a person's] status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (quoting *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)).

■ The Supreme Court in *Turner* established a four factor test to determine whether a prison policy serves legitimate penological objectives:

(1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Prison Legal News,* 238 F.3d at 1149 (citing *Turner,* 482 U.S. at 89–90, 107 S.Ct. 2254); *see also Thornburgh v. Abbott,* 490 U.S. 401, 413, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (holding that the *Turner* test applies to a prison's regulation of incoming mail).

CDC argues that the internet policy serves at least two legitimate penological interests under the *Turner* test. First, it contends that permitting prisoners to receive material downloaded from the internet would drastically increase the volume of mail that the prison had to process. Second, it asserts that internet-generated mail creates security concerns because it is easier to insert coded messages into internet material than into photocopied or handwritten material and because internet communications are harder to trace than other, permitted communications. However, as the district court explained in a detailed and persuasive analysis that we adopt, CDC failed to meet the *Turner* test because it did not articulate a rational or logical connection between its policy and these interests. *Clement,* 220 F.Supp.2d at 1110–13. Prohibiting all internet-generated mail is an arbitrary way to achieve a reduction in mail volume. *See Morrison,* 261 F.3d at 903–04 (striking down, for

similar reasons, a prison regulation that prohibited prisoners from receiving all bulk rate, third class, and fourth class mail). CDC did not support its assertion that coded messages are more likely to be inserted into internet-generated materials than word-processed documents. Moreover, Clement submitted expert testimony that it is usually easier to determine the origin of a printed email than to track handwritten or typed mail. Because the district court carefully considered and properly applied the *Turner* factors, we affirm its holding that the Pelican Bay internet-generated mail policy violates Clement's First Amendment rights.

### III.

▉ We turn to CDC's contention that the injunction entered by the district court is too broad because it enjoins the enforcement of the internet mail policy in all California prisons. Because the injunction is no broader than the constitutional violation, the district court properly entered a statewide injunction.[1]

The Prison Litigation Reform Act ("PLRA") sets forth several requirements limiting the breadth of injunctive relief:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

---

1. At oral argument, counsel for CDC also contended that the district court's order was broader than its judgment and the injunction.

This argument is specious in that the judgment and the injunction control.

18 U.S.C. § 3626(a)(1)(A); *see also Armstrong v. Davis,* 275 F.3d 849, 870 (9th Cir.2001) (noting that in *Lewis v. Casey,* 518 U.S. 343, 359, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court reiterated "the longstanding maxim that injunctive relief against a state agency or official must be no broader than necessary to remedy the constitutional violation").

■ An injunction employs the "least intrusive means necessary" when it " 'heel[s] close to the identified violation,' and is not overly 'intrusive and unworkable' ... [and] would [not] require for its enforcement the continuous supervision by the federal court over the conduct of [state officers]." *Id.* at 872 (quoting *Gilmore v. California,* 220 F.3d 987, 1005 (9th Cir. 2000) and *O'Shea v. Littleton,* 414 U.S. 488, 500–01, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

■ The district court properly addressed the injunction to all prisons under CDC control. "The scope of injunctive relief is dictated by the extent of the violation established." *Armstrong,* 275 F.3d at 870 (quoting *Lewis,* 518 U.S. at 359, 116 S.Ct. 2174). Clement has provided uncontroverted evidence that at least eight California prisons have adopted a policy banning all internet-generated mail, and that more are considering it. There is no indication in the record that the policies that other California prisons have enacted differ in any material way from Pelican Bay's blanket prohibition. Because a substantial number of California prisons are considering or have enacted virtually identical policies, the unconstitutional policy has become sufficiently pervasive to warrant system-wide relief. *Id.*

The injunction here is no broader than necessary to remedy the First Amendment violation. The injunction prohibits banning internet materials simply *because* their source is the internet. It does not prohibit restrictions for any legitimate penological or security reason. Without violating the injunction, legitimate restrictions could be adopted by any prison to meet its individual needs, for example page limitations, or a ban on recipes for pipebombs.

The state offers no argument that a total internet mail ban might be constitutional if implemented at a different prison. In such circumstances, it would be inefficient and unnecessary for prisoners in each California state prison to separately challenge the same internet mail policy; it would simply force CDC to face repetitive litigation. Moreover, if the policy is invalid at Pelican Bay, we can conceive of no reason why it would be valid elsewhere. It is well known that Pelican Bay houses maximum-security prisoners under the most restrictive conditions of any California prison.

The district court's injunction is also sufficiently narrow to "avoid unnecessary disruption to the state agency's 'normal course of proceeding.' " *Ashker v. California Dep't of Corrections,* 350 F.3d 917, 921–22, 924 (9th Cir.2003) (holding that enjoining enforcement of book labeling policy was not too broad because it closely matched the identified violation and did not interfere with the prison's policy of searching each package) (quoting *Gomez v. Vernon,* 255 F.3d 1118, 1128 (9th Cir. 2001)). The injunction does not require court supervision, enjoins only enforcement of the unconstitutional policy and does not interfere with prison mail security measures.

The district court considered the PLRA requirements and found that the injunction it issued was properly tailored to the constitutional violation. *See Armstrong,* 275 F.3d at 872 (upholding injunction where "the district court specifically made the findings required by the PLRA"). We agree. We affirm the judgment in favor of

**1154**

Clement and uphold the statewide permanent injunction entered by the district court.

AFFIRMED.