UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2006*
Decided November 2, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-3000

| | |
|---|---|
| JEVON JACKSON,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 05-C-711 |
| WILLIAM POLLARD, Warden &<br>MATTHEW J. FRANK, Secretary,<br>    *Defendants-Appellees.* | J.P. Stadtmueller,<br>*Judge.* |

**O R D E R**

Jevon Jackson filed a civil rights action under 42 U.S.C. § 1983 against William Pollard, the Warden of Green Bay Correctional Institution ("GBCI"), and Matthew Frank, the Secretary of the Wisconsin Department of Corrections ("DOC"). Jackson, a GBCI inmate, alleged that his First Amendment rights were violated when prison officials refused to deliver to him two pieces of mail: (1) a catalog that accepted as payment unused first class postage stamps; and (2) a hard copy of an e-mail responding to his personal profile on an Internet-based pen pal service. The

---

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* Fed. R. App. P. 34(a)(2).

district court granted summary judgment for Pollard and Frank. We affirm in part, and vacate and remand in part.

The following facts are undisputed. Beginning in November 2004, Jackson (with the assistance of non-incarcerated family members) listed his personal profile on the Internet site "Inmate Connections." For $40 a year, Inmate Connections will publish on the Internet a "professionally-designed, full-color" profile of inmates that prospective pen pals can access to obtain their contact information. If the inmate prefers, the service will also print and send to the inmate the "first e-mail letter from each pen pal"; after that, the pen pal and inmate write to each other directly. Jackson did not violate DOC regulations by having a profile listed on Inmate Connections because DOC has no regulation prohibiting Wisconsin inmates from having a personal web page. It also has no regulation barring inmates from receiving handwritten responses to their personal web pages, and inmates may receive e-mail print-outs unrelated to personal web pages as long as they are printed on 8½" by 11" paper. *See* DOC 309 IMP 1, 4. During his prison term, Jackson has received handwritten letters "from three different people" in response to his profile but only one (undelivered) e-mail printout.

In 2005 GBCI refused to deliver to Jackson two pieces of mail: a catalog from Mamarazzi, Inc., a company that accepts United States postage stamps as payment for items it sells, and a letter from Inmate Connections containing a hard copy of an e-mail responding to Jackson's profile. In response, Jackson filed an offender complaint challenging the non-delivery of the catalog. The prison's inmate complaint examiner dismissed the complaint on the basis that DOC regulations at the time prohibited mail from companies that accept postage stamps as payment. Jackson did not appeal this decision. Instead, three months later he attempted to revive his original complaint by stating that he had additional reasons as to why the non-delivery was improper. The inmate complaint examiner rejected this renewed attack on the basis that it impermissibly re-raised the challenge that already was decided in Jackson's first complaint. *See* Wis. Admin. Code § DOC 310.11(5)(g). Jackson appealed the rejection of his second complaint and Warden Pollard affirmed, making the decision final. *See id.* § DOC 310.11(6). In another complaint, Jackson also challenged the non-delivery of the Inmate Connections e-mail, which the inmate complaint examiner dismissed because prison regulations prohibit "Internet material or e-mail from inmate personal web pages." *See id.* § 306.04(4)(c)(5); DOC 309 IMP 1, 4. Jackson appealed this finding, and Pollard again affirmed.

Jackson then filed his civil rights suit against Pollard and Frank, claiming that his First Amendment rights were violated when GBCI refused to deliver the Mamarazzi catalog and Inmate Connections letter. In granting summary judgment for Pollard and Frank, the district court ruled that, because Jackson did not appeal

the dismissal of his first offender complaint challenging the non-delivery of the Mamarazzi catalog, he failed to properly exhaust his administrative remedies as to that claim. According to the district court, the fact that Jackson failed to exhaust his administrative remedies for his first offender complaint also doomed his second offender complaint; because Jackson's second complaint was an attempt to revive his initial—and unexhausted—claim, the second complaint also must be dismissed for failure to exhaust administrative remedies.

The court also concluded that GBCI's non-delivery of Jackson's Inmate Connections letter did not violate his First Amendment rights because the DOC regulations prohibiting the delivery of e-mail responses to an inmate's personal web page passed the test expressed in *Turner v. Safely*, 482 U.S. 78 (1987). *Turner* requires a party challenging the constitutionality of a prison regulation to demonstrate four points, only one of which is pertinent to this appeal: that there is no rational connection between the regulation and the legitimate penological interest advanced as its justification. *See id.* at 89-91. In concluding that there was a rational connection between the prohibition of e-mail responses to personal web pages and legitimate penological interests, the district court relied solely on the affidavit of Daniel Westfield, the DOC Security Chief. As relevant here, Westfield attested that the regulations existed to: (1) protect the public from inmates who will "victimize a person that may be susceptible to manipulation from an inmate with criminal intentions"; and (2) "further DOC's interest in efficient management and preserving scarce resources" which would be depleted by the delivery of a possibly large volume of Internet materials or e-mails responding to inmates' web pages.

On appeal, Jackson argues that the district court improperly granted Pollard and Frank summary judgment. He asserts that the district court erred by determining that he failed to exhaust his administrative remedies as to his initial and subsequent complaints challenging the non-delivery of the Mamarazzi catalog. He also argues that there is a genuine factual dispute over whether the regulations prohibiting inmates from receiving e-mail responses to their personal web sites are rationally related to the penological interests of protecting the public and preserving prison resources. We review the district court's grant of summary judgment *de novo*, *Johnson v. Doughty*, 433 F.3d 1001, 1009 (7th Cir. 2006) (citation omitted), and examine whether the moving parties—that is, Pollard and Frank—demonstrate that "there is no genuine issue as to any material fact" that they are entitled "to judgment as a matter of law," Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Johnson*, 433 F.3d at 1009.

We can quickly dispose of Jackson's claim that he exhausted his administrative remedies when challenging the non-delivery of the Mamarazzi catalog. Jackson candidly admits that he did not appeal his first offender complaint challenging the non-delivery of the catalog; he thus failed to exhaust his

administrative remedies as to that complaint. *See* 42 U.S.C. § 1997e(a); Wis. Admin. Code DOC §§ 310.05, 310.07(5)*; Dixon v. Page*, 291 F.3d 485, 489-91 (7th Cir. 2002). Jackson's second complaint was merely an attempt to resurrect his unappealed and unexhausted challenge to the non-delivery of the catalog. Because the prison's administrative procedures prohibited Jackson from attempting to exhaust by renewing an already-decided complaint, *see* Wis. Admin. Code DOC § 310.11(5)(g), the district court properly dismissed as unexhausted Jackson's challenge to the non-delivery of the catalog.

The district court, however, erred by granting summary judgment to Pollard and Frank on Jackson's First Amendment claim regarding the non-delivery of the Inmate Connections letter. Inmates retain a First Amendment right to receive information through the mail, *see Beard v. Banks*, 126 S. Ct. 2572, 2576-79 (2006) (citing *Turner*, 482 U.S. at 84), but it is a right that can be restricted by prison regulations that are "reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89; *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). Although the ultimate burden of persuasion with regard to the unreasonableness of a regulation resides with the inmate, *see Overton v. Bazzetta*, 539 U.S. 126, 132 (2003), the defendant administrators must "put forward" the legitimate governmental interest alleged to justify the regulation, *Turner*, 482 U.S. at 89, and "'demonstrate' that the policy drafters could rationally have seen a connection between the policy and [that interest]," *Wolf v. Ashcroft*, 297 F.3d 305, 308 (3d Cir. 2002) (internal quotations and citation omitted).

Protecting the general public is a legitimate penological interest, *see, e.g.*, *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999), and we afford great deference to prison administrators' "expertise" when they proffer such justifications for prison regulations, *see Koutnik v. Brown*, 456 F.3d 777, 785 (7th Cir. 2006) (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). But a regulation cannot stand if "the logical connection between the regulation and asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90; *see also Jones v. Brown*, 461 F.3d 353, 360 (3d Cir. 2006); *Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005) ("[I]f a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors [of the *Turner* test].").

Under these standards, Jackson has raised a genuine issue of material fact as to whether the regulation prohibiting delivery of printed e-mail responses to personal web pages rationally advances the goal of protecting the public. It is undisputed that DOC regulations allow inmates to: (1) have personal web pages; (2) receive handwritten correspondence in response to their personal web pages; (3) receive Internet materials and e-mail unrelated to personal web pages so long as they are printed on 8½" by 11" paper; and (4) communicate with the general public

through other pen pal organizations. As Jackson points out, this evidence shows that inmates can potentially manipulate the public: (1) through their personal web pages; (2) by soliciting and receiving non-electronic responses to those web pages; (3) by responding to other e-mail deliveries unrelated to personal web pages; and (4) by otherwise contacting the public through existing pen pal organizations.

Westfield offered evidence—in the form of an undeveloped conclusion—that prohibiting inmates from receiving e-mail responses to personal web pages protects the public. But a bare conclusion—even from a prison official—is insufficient to compel a factual conclusion that the prison regulations promote public protection in the face of contrary evidence. *See Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990))); *Wolf*, 297 F.3d at 308 (stating that justification for prison policy "must 'amount[] to more than a conclusory assertion.'" (quoting *Waterman v. Farmer*, 183 F.3d 208, 218 n.9 (3d Cir. 1999))); *cf. Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419-20 (7th Cir. 2005) ("'An expert [witness] who supplies nothing but a bottom line supplies nothing of value to the judicial process.'" (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989))). Westfield's affidavit does not explain how prohibiting the delivery of printed e-mail responses to personal web pages materially advances public protection when, as Jackson's evidence shows, inmates may freely influence the public by soliciting and receiving from the public handwritten responses to the inmates' personal web pages. Accordingly, there is a genuine factual dispute about whether the challenged regulation advances the goal of public protection in a non-arbitrary manner.

Also in genuine dispute is Westfield's conclusory assertion that the regulations preserve prison mail room resources by ensuring a low volume of mail. At least one federal circuit court has rejected this justification on the ground that prohibitions on receiving Internet and e-mail printouts are, by themselves, an "arbitrary way to achieve a reduction in mail volume." *See Clement v. Cal. Dep't of Corrs.*, 364 F.3d 1148, 1152 (9th Cir. 2003); *cf. Morrison v. Hall*, 261 F.3d 896, 903-04 (9th Cir. 2001) (holding that prohibiting mail solely because of the postage rate at which the mail was sent "is an arbitrary means of achieving the goal of volume control"). Jackson's experience reveals the arbitrariness underlying the regulation at issue here—he received three handwritten responses to his Inmates Connection profile but just one (undelivered) e-mail response. Westfield's unexplained conclusion that allowing hard-copies of e-mail responses to Internet profiles might increase mail volume, while allowing handwritten responses would not, fails to eliminate the factual dispute created by Jackson's personal experience. Under these circumstances, there is a triable issue as to whether banning e-mail responses preserves prison mail room resources in a non-arbitrary manner.

We accordingly AFFIRM the district court's grant of summary judgment as to Jackson's claim regarding the non-delivery of the Mamarazzi catalog, but VACATE and REMAND the court's grant of summary judgment as to Jackson's claim regarding the non-delivery of the Inmate Connections letter.