

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRED STEPHENS, | ) |
| | ) No. 72950-1-I |
| Appellant, | ) |
| | ) DIVISION ONE |
| v. | ) |
| | ) |
| DEPARTMENT OF CORRECTIONS, | ) UNPUBLISHED OPINION |
| | ) |
| Respondent. | ) FILED: March 7, 2016 |
| | ) |

APPELWICK, J. — Stephens challenged the constitutionality of a Department of Corrections policy restricting incoming third-party correspondence. The trial court dismissed his claims on summary judgment. Because the Department demonstrated that the policy was reasonably related to legitimate penological interests of security and safety, the trial court properly dismissed Stephens's claims under the First Amendment. Stephens's remaining arguments are also without merit. We affirm.

## FACTS

Fred Stephens is an inmate currently incarcerated in the Twin Rivers Unit at the Monroe Correctional Complex. RCW 72.09.530 authorizes the Secretary of the Department of Corrections (Department) to adopt a policy and methods for regulating incoming and outgoing mail, "consistent with constitutional constraints," that provide

"maximum protection of legitimate penological interests, including prison security and order and deterrence of criminal activity."

In accordance with RCW 72.09.530, the Department has adopted Policy 450.100,[1] which establishes procedures "governing mail services for offenders, defining staff responsibility for managing mail and maintaining safety and security of the public, staff, offenders, and facilities." Among other things, Policy 450.100 contains the Department's detailed regulations governing the sending and receipt of mail. The policy also prohibits various types of incoming and outgoing mail, including mail "that is deemed a threat to legitimate penological objectives." The Department has determined that third-party correspondence, i.e., correspondence or mail from someone other than the sender, presents a threat to the safety and security of the facility.

Between October 2013 and April 2014, the Department rejected multiple pieces of Stephens's incoming mail as third-party correspondence. In each case, the rejection involved printed or e-mailed correspondence that was forwarded by a third-party commercial forwarding agent. The forwarded mailings included profiles and personal communications from pen-pal web sites and two envelopes with unidentified

---

[1] DEP'T OF CORR., POLICY 450.100 (revised July 25, 2011) (Mail for Prison Offenders). A copy of the Policy appears in the record on review.

addresses. Stephens appealed each rejection, and the Department upheld the rejections. The Department notified Stephens that he could correspond directly via e-mail through the JPay System (a correctional e-mail system used to communicate with an offender in a Washington state prison).

In May 2014, Stephens filed this action against the Department and two Department employees, seeking a declaratory judgment, injunctive relief, and monetary damages. Among other things, Stephens alleged that the Department violated his constitutional rights by rejecting his incoming third-party correspondence. Stephens claimed that he was entitled to relief under both the federal and state constitutions.

The Department moved for summary judgment, relying primarily on the declaration of Roy Gonzalez, a correctional manager responsible for the oversight of offender mail. Gonzalez stated that Policy 450.100 contained a variety of provisions designed to prevent third-party correspondence, including limiting the processing of offender mail by other inmates, limiting incoming mail to correspondence and property for the receiving offender, limiting outgoing mail to the correspondence and property of the sending offender, limiting the salutation of non-legal mail to the addressee, and prohibiting mail without an identifiable author or sender.

Gonzalez explained that the restriction on third-party correspondence through commercial forwarding agents was necessary to ensure the safety of both Department facilities and the public:

> Because these mailings [are] from third party commercial forwarding agents, the Department cannot discern the identity of the true sender. Both incoming and outgoing third-party mail interferes with the Department's ability to identify parties with whom offenders are corresponding. It is important for the Department to know the identity of people who are corresponding with offenders to ensure they are not attempting to contact those with whom correspondence is prohibited. Identifying parties with whom offenders correspond is important to public safety, as many offenders have limitations on whom they may contact including minor children, victims of their crimes, other offenders, or individuals who may have a no[-]contact order against particular offenders. Requiring all parties who are corresponding with offenders to properly identify themselves also allows Department staff to accurately assess whether the mail presents security concerns without having to do extensive research for each piece of mail. Without an identifiable sender or author, the Department cannot accurately discern whether correspondence is in violation of any no-contact order.

The trial court entered summary judgment in favor of the Department. Stephens appeals.

## DISCUSSION

### I. Standard of Review

We review the trial court's decision on summary judgment de novo. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We consider the materials before the trial court and construe the facts and inferences in the light most favorable

to the nonmoving party.  Id.  Summary judgment is proper only if there is no genuine issue of material fact.  CR 56(c); Keck v. Colins, 184 Wn.2d at 370.

## II.   First Amendment

Stephens contends that the Department's restrictions on incoming third-party correspondence violate his First Amendment right to free speech.  "A prisoner retains those First Amendment rights that are consistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  In re Pers. Restraint of Parmelee, 115 Wn. App. 273, 281, 63 P.3d 800 (2003).  "As a condition of confinement, an inmate's First Amendment right to send and receive mail lawfully may be restricted by prison regulations reasonably related to legitimate penological interests."  Livingston v. Cedeno, 164 Wn.2d 46, 56, 186 P.3d 1055 (2008).

When determining whether a prison regulation is reasonably related to legitimate penological goals, Washington courts consider the four factors set forth in Turner v. Safley, 482 U.S. 78, 87-89, 107 S. Ct. 2254, 96 L .Ed .2d 64 (1987):

> "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it.  Second, courts consider whether there are 'alternative means of exercising the [constitutional] right that remain open to prison inmates.'  Third, courts consider 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.'  And fourth, 'the absence of ready alternatives is evidence of the reasonableness of a prison regulation.'"

-5-

Parmelee, 115 Wn. App. at 282 (alteration in original) (citations omitted) (quoting Turner, 482 U.S. at 89-90); see also In re Pers. Restraint of Arsenau, 98 Wn. App. 368, 375-76, 989 P.2d 1197 (1999); cf. McNabb v. Dep't of Corr., 163 Wn.2d 393, 404-05, 180 P.3d 1257 (2008). The Turner analysis applies to prison regulations restricting incoming mail. Thornburg v. Abbott, 490 U.S. 401, 413, 109 S. Ct. 1874, 104 L. Ed. 2d (1989). Because judgments regarding prison security " 'are peculiarly within the province and professional expertise of corrections officials,' " courts should " 'ordinarily defer to their expert judgment' " absent substantial evidence to indicate an exaggerated response. Arsenau, 98 Wn. App. at 375 (quoting Turner, 482 U.S. at 86).

In addressing the first Turner factor, the Department maintains that the incoming third-party mail restriction serves the penological interests of ensuring the safety and security of the inmates, the Department facilities, and the general public. Stephens does not dispute that security and safety are legitimate and neutral penological objectives. Nor does Stephens dispute that the Department has the right to review certain types of incoming mail to further these penological interests.

As explained in the declaration of Gonzalez, third-party incoming correspondence poses a threat to the safety of the inmates, corrections officers, and the general public because the Department generally cannot determine the true

identity of the sender. The Department therefore cannot ascertain if the correspondence involves a prohibited sender. As Gonzalez noted, inmates are often restricted from contacting various individuals, including minor children, victims of the crime, and other offenders. Under the circumstances, the Department has demonstrated a valid, rational connection between the restrictions on incoming third-party correspondence and legitimate penological interests. The first Turner factor favors the validity of the challenged policy.

Stephens contends the Department failed to demonstrate a rational connection between the mail restriction and the penological goals, citing Clement v. Cal. Dep't of Corr., 364 F.3d 1148 (9th Cir. 2004). In Clement, the Ninth Circuit affirmed a trial court injunction against the enforcement of a prison internet mail policy that prohibited "mail containing material that has been downloaded from the internet but is not violated if information from the internet is retyped or copied into a document generated in a word processor program." Id. at 1150-51. The court found that the prohibition of "all internet-generated mail" was an arbitrary way to achieve the intended reduction in mail volume and that the evidence failed to support the corrections department's claim that "coded messages" are more likely to be inserted into internet-generated materials than into word-processed documents. Id. at 1152. Under the circumstances, the court concluded that the mail policy did not

demonstrate a rational connection between the policy and legitimate penological interests. Id.

Stephens makes no showing that the sweeping ban of internet materials at issue in Clement bears any resemblance to the more narrow restrictions here, which are based on the Department's undisputed need to ascertain, in most circumstances, the identity of individuals who are sending correspondence to inmates. Nothing in Clement undermines the Department's policy of restricting incoming third-party correspondence.

The second Turner factor considers whether Stephens has alternative means for exercising his constitutional rights. Stephens asserts that there "is simply no alternative to the internet." But the issue before us is the validity of the third-party incoming mail restriction, not the Department's internet access policy. The Department's policy restricts Stephens's ability to correspond through commercial forwarding agents. Stephens retains the right to communicate directly with individuals. The Department expressly advised Stephens that he was permitted to conduct direct e-mail correspondence through the authorized JPay system.

The third and fourth Turner factors also weigh in favor of the Department's policy. Accommodation of third-party correspondence would clearly impose significant burdens on Department staff and resources, given the inherent difficulty of

determining the identity of the sender of forwarded correspondence, e-mail, or website printouts. Stephens asserts that "e-mails and websites are fully traceable" and that this court should "presume that [website providers] will not participate in illegal activities." But, Stephens fails to indicate how this approach would be feasible or practical in the prison setting. Nor does he indicate how, even if the Department could reasonably determine the originating IP address (Internet Protocol address—a numerical label assigned to each device, i.e., computer) of a computer, that information would permit identification of the sender.

Stephens also asserts that there is no evidence that internet providers have facilitated prohibited contact. But, even if true, this does not undermine the rational connection between the restriction on incoming third-party mail and the Department's safety concerns:

> To show a rational relationship between a regulation and a legitimate penological interest, prison officials need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future. . . . The only question that we must answer is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests.

Mauro v. Arpaio, 188 F.3d 1054, 1060 (9th Cir. 1999) (citations omitted).

Based on a consideration of the Turner factors, the trial court properly dismissed Stephens' First Amendment challenge on summary judgment.

III.    Article 1, § 5

Stephens contends that the trial court committed "plain error" by failing to consider his challenge to the Department's incoming mail policy based on an independent analysis of Article 1, § 5, the free speech provision of the Washington Constitution.    Article 1, § 5 provides "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right."    Stephens asserts that article 1, § 5 independently mandates broader protection for an inmate's free speech rights than the First Amendment of the United States Constitution.    He argues that under the State constitution, he therefore "has the same right to receive internet speech as other citizens," unless the Department demonstrates that the incoming third-party mail policy furthers a substantial government interest.    Stephens has not provided any coherent legal theory or citation to relevant authority to support his sweeping claims.

It is undisputed that article 1, § 5 provides broader constitutional protection in some circumstances and is subject to independent interpretation.    See State v. Reece, 110 Wn.2d 766, 778, 757 P.2d 947 (1988); Bradburn v. N. Cent. Reg'l Library Dist., 168 Wn.2d 789, 800, 231 P.3d 166 (2010).    Our Supreme Court has noted that no greater protection than the First Amendment "is afforded to obscenity, speech in nonpublic forums, commercial speech, and false or defamatory statements."

Bradburn, 168 Wn.2d at 800; City of Seattle v. Huff, 111 Wn.2d 923, 926, 767 P.2d 572 (1989); Nat'l Fed'n of Retired Persons v. Ins. Comm'r, 120 Wn.2d 101, 119, 838 P.2d 680 (1992); Richmond v. Thompson, 130 Wn.2d 368, 382, 922 P.2d 1343 (1996).

> Contrary to Stephens' suggestions, the relevant inquiry
>
> must focus on the specific context in which the state constitutional challenge is raised. Even where a state constitutional provision has been subject to independent interpretation and found to be more protective in a particular context, it does not follow that greater protection is provided in all contexts.

Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 115, 937 P.2d 154 (1997) (sexually explicit dance did not warrant application of the more protective time, place, and manner analysis developed under art. 1, § 5). In undertaking this analysis, courts should use the nonexclusive criteria set forth in State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986), to determine "whether the state constitution ultimately provides greater protection than its corresponding federal provision." Ino Ino v. Bellevue, 132 Wn.2d at 114-15.

In support of his claim that article 1, § 5 is more protective of an inmate's incoming mail rights than the First Amendment, Stephens provides no meaningful legal argument. Rather, he relies on broad generalizations of free speech rights and citations from various cases taken out of context. Nor has he provided an adequate

analysis of the Gunwall factors. We therefore decline to address Stephens's claim that article 1, § 5 provides greater protection than the First Amendment in the context of the challenged mail policy. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to consider issues unsupported by cogent legal argument and citation to relevant authority).

IV.   Communications Decency Act

Stephens contends that the summary judgment must be reversed because the Communications Decency Act (CDA), 47 U.S.C. § 230, preempts RCW 72.09.530 and Department Policy 450.100. Under the CDA, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1); see generally J.S. v. Vill. Voice Media Holdings, LLC, 184 Wn.2d 95, 359 P.3d 714 (2015); Schneider v. Amazon.com, Inc., 108 Wn. App. 454, 31 P.3d 37 (2001). But, Stephens offers no coherent explanation of how the CDA supports his claims against the Department. We therefore decline to consider Stephens's CDA contentions.

V.   Retaliation

Stephens contends that his retaliation claim also precludes summary judgment. Stephens alleges that the Department rejected his third-party mail and denied him job opportunities in retaliation for a lawsuit that he filed against the

Department. Generally, to prevail on a claim of retaliation under 42 U.S.C. §1983, Stephens must establish, among other things, that he engaged in constitutionally protected activity and that the conduct was a substantial or motivating factor for the alleged retaliatory acts. See Brodheim v. Cry, 584 F3d 1262, 1271 (9th Cir. 2009).

Stephens relies on the declaration from another inmate who claims to have received "postings from the internet" to establish that the Department treated him differently by rejecting his internet mail. But, the declaration does not identify the specific postings received, the date they were received, or any other circumstances demonstrating some relevance to Stephens's retaliation claim. Under the circumstances, the record fails to demonstrate a material factual dispute as to a causal connection between Stephens's protected activity and the alleged retaliatory actions. The trial court properly dismissed Stephens's retaliation claim on summary judgment.

VI.     Prior Restraint

Stephens contends that the Department's third-party mail policy is an unconstitutional prior restraint under article 1, § 5. " 'Unlike the First Amendment, article 1, section 5 categorically rules out prior restraints on constitutionally protected speech under any circumstances.' " Voters Educ. Comm. v. Pub. Disclosure Comm'n., 161 Wn.2d 470, 493-94, 166 P.3d 1174 (2007) (quoting O'Day v. King

County, 109 Wn.2d 796, 804, 749 P.2d 142 (1988)). A prior restraint " 'is an administrative or judicial order forbidding communications prior to their occurrence. Simply stated, a prior restraint prohibits future speech, as opposed to punishing past speech.' " Id. at 494 (emphasis added) (quoting Soundgarden v. Eikenberry, 123 Wn.2d 750, 764, 871 P.2d 1050 (1994)).

Stephens does not articulate how the Department's regulation of third-party incoming mail prohibited his constitutionally protected speech. See Voters Educ. Comm.Id. at 494-95. He therefore fails to demonstrate any basis for application of the highly protective rules against prior restraints.

VII.   Overbreadth

Stephens contends that both RCW 72.09.530 and the Department Policy 450.100 are unconstitutionally overbroad. "A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities." Huff, 111 Wn.2d 925. Overbreadth requires a showing that the enactment reaches a substantial amount of constitutionally protected conduct. Id.

On its face, RCW 72.09.530 is not overbroad because it expressly authorizes regulations "consistent with constitutional constraints." Moreover, Stephens's overbreadth challenge to policy 450.100 appears to rest on the mistaken premise that the policy prohibits "one of the most comprehensive and advanced platforms for

free speech ever conceived -- the World Wide Web, the internet." But, as the Department points out, the mail rejections at issue here were not based on the fact that the communications originated on the internet, but on the fact they involved prohibited communications from third parties. Stephens's overbreadth claim fails.

Affirmed.

WE CONCUR:

Trickey, J

Cox, J.