# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Talbert, : 
                Petitioner : 
                 : No. 543 M.D. 2023
      v. : 
                 : Submitted: August 8, 2025
Commonwealth of Pennsylvania, : 
Governor Josh Shapiro, Laurel Harry, : 
Department of Corrections, Christine : 
Meukel, Mindy Parks, and Smart : 
Communications, : 
                Respondents : 


**_OPINION NOT REPORTED_**

**MEMORANDUM OPINION**
**PER CURIAM**                              **FILED: December 15, 2025**

Petitioner Charles Talbert, an inmate currently incarcerated within our Commonwealth's prison system, has filed a *pro se* amended petition for review (Amended Petition) in our original jurisdiction. Talbert requests that we grant his related Motion for Judgment on the Pleadings (MJP), through which he asserts that he is entitled to judgment as a matter of law against Respondents Commonwealth of Pennsylvania (Commonwealth), Governor Josh Shapiro, Laurel Harry, and Department of Corrections (Department) regarding Count I of the Amended Petition. Upon review, we deny Talbert's MJP.

# I. BACKGROUND

Talbert's Amended Petition originally contained four counts, through which he sought relief against Commonwealth Respondents, as well as Respondents Smart Communications, Christine Meukel, and Mindy Parks. In Count I, Talbert asserted that Commonwealth Respondents violated article I, section 7 of the Pennsylvania Constitution[1] by arbitrarily and capriciously preventing him from accessing "current information from the [i]nternet" in any capacity, despite the fact that such access could be filtered and monitored. Am. Pet., ¶¶14, 16-18, 62. In Count II, Talbert alleged that Commonwealth Respondents', Meukel's, and Park's handling of his inmate mail violated his First Amendment-based right to free speech. *Id.*, ¶¶20-25, 32-33, 63-66. In Count III, Talbert argued that the Commonwealth, the Department, and Smart Communications had conspired to commit fraud by agreeing under false pretenses to have Smart Communications process and scan incoming inmate mail. *Id.*, ¶¶53-54, 67-69. Finally, in Count IV, Talbert maintained that Commonwealth Respondents' refusal to allow him to have five boxes for storing his legal materials, rather than the two allowed under Department policy, violated his right to seek relief through the courts under article I, section 11 of the Pennsylvania Constitution.[2] *Id.*, ¶¶57-61, 70-73.[3]

Commonwealth Respondents, Meukel, and Parks responded to the Amended Petition by filing preliminary objections, as did Smart Communications. We subsequently sustained Commonwealth Respondents', Meukel's, and Park's

---

[1] PA. CONST. art. I, § 7.

[2] PA. CONST. art. I, § 11.

[3] We note that Talbert mentions in his Memorandum of Law in Support of his MJP that Commonwealth Respondents have asserted elsewhere that he "has [had] 120 upheld misconducts filed against him throughout his state sentence" and that he "poses a security concern based upon 28 misconduct reports being for assault[,]" but does not dispute the accuracy of either assertion. *See* Talbert's Mem. of Law in Support of MJP (Memorandum) at 6.

preliminary objections to Counts II and IV, but overruled their preliminary objections to Count I. *Talbert v. Com.* (Pa. Cmwlth., No. 543 M.D. 2023, filed Nov. 6, 2024), slip op. at 8-13, 16-17 (*Talbert I*), 2024 WL 4688748, at *4-*6, *8. In addition, we *sua sponte* concluded that we lacked jurisdiction over Count III and consequently transferred that claim to the Court of Common Pleas of the 37th Judicial District - Forest County Branch.[4] *Id.*, slip op. at 13-16, 2024 WL 4688748, at *7. Finally, we denied Talbert's Application for Summary Relief with regard to Count I, the sole claim that remained before us at that point. *Id.*, slip op. at 17-19, 2024 WL 4688748, at *9.

After *Talbert I*, Commonwealth Respondents filed an "Answer and New Matter/Affirmative Defenses" (Answer). Talbert then filed his aforementioned MJP, to which Commonwealth Respondents responded in opposition. Accordingly, we now address the merits of Talbert's MJP.

## II. DISCUSSION

As already mentioned, Talbert argues in his MJP that he is entitled to judgment as a matter of law in his favor against Commonwealth Respondents regarding Count I.[5] He maintains that this is so because Commonwealth

---

[4] In doing so, we noted that "Talbert was incarcerated at the State Correctional Institution at Forest (SCI-Forest) at the time that the facts giving rise to his lawsuit occurred[,]" and took "judicial notice of the fact that SCI-Forest is located in Forest County, as well as that Forest County is part of the 37th Judicial District." *See Talbert I*, slip op. at 2 n.1.

[5] When ruling on a motion for judgment on the pleadings, we view all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted are considered against the opposing party. We consider only the pleadings themselves and any documents properly attached to them[, and will] grant judgment on the pleadings only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.

3

Respondents allegedly failed to plausibly assert in their Answer that the restrictions they have imposed upon his ability to access the internet serve a legitimate penological interest. *See* Memorandum at 1-9. We disagree.

To reiterate, Talbert's claim in Count I is based upon his belief that these restrictions violate article I, section 7 of the Pennsylvania Constitution, because they completely prevent him from accessing current information via the internet. Am. Pet., ¶¶14, 16-18, 62. This constitutional provision states, in relevant part: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." PA. CONST. art. I, § 7.

"Because of the crimes that prisoners committed resulting in their incarceration, prison officials are given a wide range of discretion in the promulgation and enforcement of rules to govern the prison community in order to maintain security, order and discipline." *Maute v. Frank*, 670 A.2d 737, 739 (Pa. Cmwlth. 1996). In keeping with this understanding, prison regulations are considered to be presumptively reasonable, and "the burden is [generally placed] on the prisoner to disprove [a] prison regulation's validity[.]" *Brittain v. Beard*, 974 A.2d 479, 487 (Pa. 2009). However, where prison regulations impinge upon an inmate's constitutional rights, the burden shifts slightly. Specifically, the government must facially establish that those limitations are reasonably related to a legitimate penological interest in order to defeat a claim regarding that impingement. *Thomas v. Corbett*, 90 A.3d 789, 798 (Pa. Cmwlth. 2014); *accord Brittain*, 974 A.2d at 487 ("[O]nce an inmate commences an action challenging a prison regulation, it

---

*Stilp v. Gen. Assembly*, 929 A.2d 660, 662 (Pa. Cmwlth. 2007) (cleaned up). "Such a motion may be granted only where the law is clear that a trial would be a fruitless exercise." *Stoppie v. Johns*, 720 A.2d 808, 809 (Pa. Cmwlth. 1998).

4

is the obligation of the Department to set forth, in its answer to the inmate's complaint, its belief that there is a valid and rational connection between the challenged regulation and an enumerated legitimate penological interest."). The burden then shifts to the inmate, who must prove that the challenged regulation is not reasonably related to a legitimate penological interest. *Brittain*, 974 A.2d at 487-88. In order to determine if the requisite relationship exists, a court must consider four separate factors. First, "whether there is a 'valid, rational connection' between the prison regulation and the legitimate, neutral, governmental interest advanced to justify the regulation[.]" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)). Second, "whether the inmate has an alternative means of exercising the right at issue[.]" *Id.* Third, "the burden that [an] accommodation would impose on prison resources[.]" *Id.* Finally, "whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at a *de minimis* cost to valid penological objectives." *Id.*

To the extent that Talbert asserts that he has an indisputable constitutional right *as a matter of law* to access current information via the internet while incarcerated, his confidence is misplaced.[6] It is well settled that "[p]rison

---

[6] Talbert has made the following, relevant averments in his Amended Petition:

> 14. [Commonwealth Respondents] have adopted, implemented, and enforced an unconstitutional practice of foreclosing [Talbert's] ability to research and print out current information from the [i]nternet, to [sic] which has caused him to lose contact with the thoughts and opinions of modern society.
>
> 15. To become a productive citizen upon his release from [Commonwealth Respondents'] custody, it is empirical [sic] that [Talbert] has current knowledge on the subjects of:
>> A. education
>> B. employment
>> C. housing

inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Bronson v. Cent. Off. Rev. Comm.*, 721 A.2d 357, 359 (Pa. 1998). As we have noted in the past, "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Robson v. Biester*, 420 A.2d 9, 13 (Pa.

---

      D. government
      E. laws
      F. financial resources
      G. health care
      H. insurance

16. [Commonwealth Respondents] doesn't [sic] provide [Talbert] this necessary service, neither [sic] through self-research, or research provided by any of its general staff members.

17. Such form of restriction is arbitrary and capricious because it lacks a legitimate governmental objective and hinders [Talbert's] rehabilitation unnecessarily and unreasonably.

18. Even though search engines like Google are capable of enabling a person to research prohibited material such as porn and other subjects that goes [sic] against institutional standards, [Commonwealth Respondents] can easily have that search engine tweaked and have it supervised by:
      A. changing the content settings.
      B. block specific channels.
      C. change the features [Talbert] can use. . . .

19. However, by [Commonwealth Respondents'] complete foreclosure of [i]nternet access, [Talbert] will leave prison in 2026 with only the knowledge that he had seven years ago, causing his ability to adjust back into society to be greatly impaired.

. . . .

62. As aforementioned, the [Pennsylvania] Constitution guarantees [Talbert] the right to receive access to the [i]nternet in order to obtain current information on subjects pertinent to his return back into [sic] society in 2026.

63. However, [Commonwealth Respondents] have unreasonably foreclosed [Talbert's] ability to obtain current information from the [i]nternet[,] which has violated the very principle of [a]rticle I, [s]ection 7 of the [Pennsylvania] Constitution.

Am. Pet., ¶¶14-19, 62-63.

Cmwlth. 1980). In addition, it is well settled that Department regulations that restrict inmates' ability to freely communicate and to access information can pass constitutional muster. *See Key v. Pa. Dep't of Corr.*, 185 A.3d 421, 424-26 (Pa. Cmwlth. 2018); *Brittain*, 974 A.2d at 487-88; *Payne v. Dep't of Corr.*, 871 A.2d 795, 810-11 (Pa. 2005). Despite this, Talbert provides nothing more than bald, unsupported averments in his Amended Petition regarding his putative right to internet access and relies exclusively in his Memorandum upon case law that is either wholly inapposite or does not address whether inmates have a constitutional right to such access. *See* Am. Pet., ¶¶14-19, 62-63; Mem. at 3-4 (citing and/or quoting *Packingham v. N. Carolina*, 582 U.S. 98 (2017); *Scarnatti v. Wolf*, 135 A.3d 200 (Pa. Cmwlth. 2015), rev'd, 173 A.3d 1110 (Pa. 2017); and *Clement v. Calif. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004)).[7]

Furthermore, we disagree with Talbert's characterization of Commonwealth Respondents' Answer.[8] In their Answer, Commonwealth Respondents admitted that the Department of Corrections has adopted a policy that

---

[7] *Packingham* held that North Carolina law barring registered sex offenders from using social media platforms after their release from prison violated the First Amendment. 582 U.S. at 105-08. In relevant part, *Scarnatti* dealt with whether posting a press release on a Commonwealth of Pennsylvania website regarding the governor's line-item veto of two bills while the General Assembly stood in adjournment satisfied the Pennsylvania Constitution's public proclamation requirement. 135 A.3d at 212-18. Finally, *Clement* concluded that a California Department of Corrections policy that barred inmates from receiving via mail any material that had been downloaded from the internet violated the First Amendment. 364 F.3d at 1150-52.

[8] Per Pennsylvania Rule of Civil Procedure 1029, an answer "shall admit or deny each averment of fact in the preceding pleading or any part thereof to which it is responsive. Pa. R.Civ.P. 1029(a). "Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission." Pa. R.Civ.P. 1029(b). Of particular relevance to this matter, "[a] statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial." Pa. R.Civ.P. 1029(c).

limits inmates' ability to access the internet but specifically denied that this policy forecloses *all* access. *See* Answer, ¶¶14, 16, 63. Commonwealth Respondents also specifically asserted as an "affirmative defense" that "[a]ll decisions regarding [Talbert] and [Department of Corrections] policy were taken for legitimate penological and/or business reasons, none of which violate the United States Constitution, federal law, or Pennsylvania's Constitution and Pennsylvania's laws." *Id.*, Eighth Affirmative Defense.[9] In addition, Commonwealth Respondents stated that they lack sufficient information to form a belief regarding (a) whether "this policy has caused [Talbert] to lose contact with the thoughts and opinions of modern society"; (b) the necessity of Talbert having up-to-date knowledge regarding the specific subjects he mentions in his Amended Petition; and (c) whether, as a result of this policy, Talbert will leave prison next year with only the knowledge he possessed upon his incarceration in 2019. *See id.*, ¶¶14-16, 19 (cleaned up). These denials and statements are sufficiently responsive to the Amended Petition for three reasons. First, they contest Talbert's position that the challenged restrictions do not serve a legitimate penological interest. Second, they note that many of Talbert's pertinent averments are based upon his subjective beliefs and/or experiences, the veracity of which Commonwealth Respondents cannot determine on the face of the

---

[9] We note that, standing alone, this generalized assertion would be insufficient to satisfy Commonwealth Respondents' low threshold for satisfying their initial burden, because they did not link the challenged regulation to "an enumerated legitimate penological interest." *Brittain*, 974 A.2d at 487; *see also Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (cleaned up) ("Although we accord substantial deference to their professional judgment, [prison] administrators' evidence [regarding whether a regulation is reasonably related to a legitimate penological interest] must amount to more than a conclusory assertion."). This deficiency is ultimately of no moment because (as discussed *infra*), Commonwealth Respondents clearly and specifically contest Talbert's assertion that the relevant regulation completely prevents him from accessing the internet and adequately dispute Talbert's averments about how the policy has affected him. *See* Answer, ¶¶14-16, 19, 63.

Amended Petition alone. Finally, and most importantly, they directly challenge Talbert's assertion that the Department has implemented a policy that *completely* prevents him from accessing the internet while incarcerated and assert that the relevant policy, which they specifically identify, only *limits* such access. Given this, we cannot conclude that Talbert is entitled to judgment as a matter of law regarding Count I of his Amended Petition.

## III. CONCLUSION

In accordance with the foregoing analysis, we deny Talbert's MJP.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Talbert, :
              Petitioner :
               : No. 543 M.D. 2023
          v. :
               :
Commonwealth of Pennsylvania, :
Governor Josh Shapiro, Laurel Harry, :
Department of Corrections, Christine :
Meukel, Mindy Parks, and Smart :
Communications, :
              Respondents :

**PER CURIAM**

# O R D E R

AND NOW, this 15th day of December, 2025, it is hereby ORDERED that Petitioner Charles Talbert's Motion for Judgment on the Pleadings is DENIED.